# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4084 | **DATE** | 5/15/2003 |
| **CASE TITLE** | Clark vs. Underwriters Mgt | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set out in the Memorandum Opinion and Order, Plaintiff's Motion for Entry of a Rule 54(b) Judgment [82-1] is denied; Plaintiff's Motion to Dismiss or Stay Meier's Counterclaim [85-1] is denied; and Plaintiff's Motion to Amend Answer to Defendants' Counterclaims [90-1] is granted. Plaintiff is given leave to file his Amended Answer and Affirmative Defenses instanter. Status is hereby set for May 28, 2003 at 9:45 a.m., at which time Defendants shall be prepared to discuss what, if any, specific additional discovery they would seek to take in light of the amendment. Enter Memorandum Opinion and Order. *Geraldine Soat Brown*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 16 2003 | |
| | Notified counsel by telephone. | | docketing deputy initials | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | 5/15/2003 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MW | courtroom deputy's initials | FILED FOR DOCKETING (3/...) 15  PM 9:25 | MW mailing deputy initials | |
| | | Date/time received in U.S. Central Clerk's Office | | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **J. ANTHONY CLARK,** ) | |
| **Plaintiff,**[1] ) | **Cause No. 98 C 4084** |
| ) | |
| **v.** ) | **Magistrate Judge Geraldine Soat Brown** |
| ) | |
| **UNDERWRITERS MANAGEMENT** ) | |
| **CORPORATION, et al.** ) | |
| **Defendants.** ) | |



MAY 1 6 2003

## MEMORANDUM OPINION AND ORDER

Following the ruling on the parties' motions for summary judgment, *Shapo v. Underwriters Management Corp.*, 98 C 4084, 2002 WL 31155059 (N.D. Ill. Sept. 27, 2002) [dkt # 77], the plaintiff, the Director of Insurance of the State of Illinois and Liquidator for the Prestige Casualty Company (the "Plaintiff"), filed three motions:

1)   For entry of a Rule 54(b) judgment against defendants Norman Meier and the Underwriters Management Corporation (collectively the "Defendants") [dkt # 82];

2)   For an order dismissing, or, in the alternative, staying, Meier's counterclaim [dkt # 85][2]; and

3)   For leave to amend his answer to assert additional affirmative defenses [dkt # 90].

For the reasons set out herein, Plaintiff's motion for a Rule 54(b) final judgment and Plaintiff's

---

[1]   Pursuant to Fed. R. Civ. P. 25(d)(1), J. Anthony Clark, the successor to Nathaniel Shapo as Director of Insurance for the State of Illinois, was substituted as the plaintiff in this case. [Dkt # 94.]

[2]   Although the parties refer to "the defendants' counterclaims," there is only one counterclaim (with four counts), and only one counterclaimant, Norman Meier. [Dkt # 16.]

1

motion for an order dismissing or, in the alternative, staying, Meier's counterclaim are denied. Plaintiff's motion for leave to amend his answer to plead affirmative defenses of waiver and estoppel is granted.

## BACKGROUND

The factual background of this case was set out in the opinion on the parties' motions for summary judgment. *Shapo v. Underwriters Management Corp.*, 98 C 4084, 2002 WL 31155059 (N.D. Ill. Sept. 27, 2002). In 1992, defendant Norman Meier and others acquired Prestige Casualty Company ("Prestige"). *Id.* at *1. As part of that acquisition, Meier contributed 100,000 shares of stock in Columbia Laboratories, Inc. ("Columbia Lab") to Fargo Acceptance Corporation ("Fargo"), wholly-owned subsidiary of Prestige, to increase the capital of financially troubled Prestige. *Id.* Meier alleges that the contribution was made subject to a Call Option Agreement that would allow him to re-acquire the shares at a later date if they appreciated to 140 percent of their value. *Id.* at *2. Plaintiff contests the authenticity, validity and enforceability of the Call Option Agreement. Meier, in his capacity as President and sole officer and shareholder of Underwriters Management Corp. ("Underwriters"), signed a Promissory Note from Underwriters to Prestige in the amount of $200,000 in exchange for funds from Prestige to pay the exercise price of the option to buy the Columbia Lab shares and to deal with the tax consequences of exercising his option to buy the shares. *Id.* In 1994, the Circuit Court of Cook County issued an Order of Liquidation and Finding of Insolvency against Prestige. *Id.* at *3. Plaintiff was appointed to marshal and liquidate the assets of Prestige pursuant to the Illinois Insurance Code. *Id.* In 1995, after failed negotiations with Meier regarding Meier's repurchase of the Columbia Lab stock, Plaintiff sold the stock on the open market. *Id.* In 1997, Plaintiff made demand for payment on the Note, and Meier sought to exercise his rights

under the Call Option Agreement. *Id.* at 4. In 1998, Plaintiff filed suit in the Circuit Court of Cook County against Defendants alleging a breach of the Note. *Id.* Plaintiff also alleged breach of fiduciary duty against Meier, conversion against Meier and Underwriters, fraudulent misrepresentation against Meier and unjust enrichment against Meier and Underwriters. (Mem. Supp. Mot. Dismiss Defs.' Countercls., Ex. B, Pet. Collect Promissory Note, Counts II-V.) Defendants removed the case to federal court. [Dkt # 1.] Meier filed a counterclaim alleging four theories of recovery: tortuous interference with contract, unjust enrichment, conversion, and fraudulent transfer, arising out of the sale of the Columbia Lab shares. *Shapo*, 2002 WL 31155059 at *4. On September 27, 2002, this court granted summary judgment for Plaintiff on his claim against Defendants for breach of the Note. *Id.* at *19. Defendants' motion for summary judgment, and Plaintiff's motion for summary judgment on Meier's counterclaim were denied. *Id.*

## DISCUSSION

Plaintiff's Motion for Rule 54(b) Final Judgment.

Federal Rule of Civil Procedure 54(b) provides that "[w]hen more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

In deciding whether to enter a Rule 54(b) determination, "[a] district court must first determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7 (1980), quoting *Sears, Roebuck & Co. v. Mackey*, 351

3

U.S. 427, 436 (1956). Summary judgment has been entered on Plaintiff's claim on the Note. *Shapo*, 2002 WL 31155059 at \*19. Apparently, the Defendants do not dispute that the decision is sufficient to constitute a "final judgment" with regard to Plaintiff's claim on the Note for purposes of Rule 54(b).

The court must next determine "whether there is any just reason for delay." *Curtiss-Wright*, 446 U.S. at 8. In making that determination the court is to take into account "judicial administrative interests as well as the equities involved" with an eye towards preserving "the historic federal policy against piecemeal appeals." *Id.* The notes of the Advisory Committee accompanying Rule 54(b) observe that the Rule was intended to be reserved for "the infrequent harsh case." As a result, "requests under Rule 54(b) are granted neither routinely nor as a matter of course." *Architectural Floor Products Co. v. Don Brann and Associates Co.*, 551 F. Supp. 802, 807 (N.D. Ill. 1982). The moving party "bears the burden of showing it will suffer unjust harm if final judgment is delayed." *Id.* at 808. However, the court "may properly consider all of the consequences of a final judgment or lack thereof and balance the competing interests of the parties in the context of the particular case." *Bank of Lincolnwood v. Federal Leasing Inc.*, 622 F.2d 944, 949 n.7 (7th Cir. 1980). The fact that a non-frivolous counterclaim remains to be determined does not preclude a Rule 54(b) determination, although the interrelationship of the counterclaim with the claim on which certification is sought must be considered. *Curtiss-Wright*, 446 U.S. at 9.

On the issue of piecemeal appeals, although Plaintiff here is seeking the Rule 54(b) determination for the purpose of enforcement rather than appeal (Pl.'s Mem. Supp. Mot. Rule 54(b) J. at 5), the entry of a Rule 54(b) determination would have the effect both of allowing Plaintiff to begin proceedings to collect his judgment from Defendants and of allowing Defendants to appeal.

4

*See Architectural*, 551 F. Supp at 807. The Plaintiff cites *Teeters v. Larson*, 01 C 216, 2001 WL 1230629 (N.D. Ill. Oct. 5, 2001)(Grady, J.); however, in that case the court made a Rule 54(b) determination because the defendant's liability for the claims on which summary judgment was entered was uncontested. *Id.* at *5. The court chose not to analyze the possibility of multiple appeals because "an appeal does not seem to be imminent," not because entry of judgment under Rule 54(b) can be limited to collection of the judgment. *Id.* at *5, n.11.

On the other hand, the fact that granting a Rule 54(b) motion may result in separate appeals does not require denial of a Rule 54(b) judgment where the appeals would involve distinct factual and legal issues. *See Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1368 (7th Cir. 1990)(court has the power to enter Rule 54(b) judgment on legally distinct claims involving separate facts). The Seventh Circuit has stated that "two 'claims' may arise out of the same transaction for purposes of Rule 54(b), provided that the facts and theories are sufficiently distinct." *NAACP v. American Family Mutual Insurance Co.*, 978 F.2d 287, 292 (7th Cir. 1992). Thus, "[i]f the claims are legally distinct and involve at least some separate facts, the district court has the *power* to enter a Rule 54(b) judgment." *Olympia Hotels*, 908 F.2d at 1368 (emphasis in original).

At issue in Plaintiff's claim on the Note was Meier's personal liability for the Note, Plaintiff's standing to enforce the Note, and the Defendants' affirmative defense of set-off. *Shapo*, 2002 WL 31155059 at **5-9. Meier's counterclaim involves issues such as the authenticity of the Call Option Agreement, the authority of the signer of the Call Option Agreement to bind Fargo, and the applicability of a corrective order to the Call Option Agreement. *Id.* at **10-18. In denying Defendants' defense of set off, this court determined that the Note and the Call Option Agreement

5

were "separate and distinct." *Shapo*, 2002 WL 31155059 at *9. Thus, a Rule 54(b) determination *could* be made in this case. The issue is whether it should be.

The reality of this litigation is that a Rule 54(b) determination will almost undoubtedly result in an appeal by Defendants. The entry of summary judgment on the Note against both Underwriters and Meier resulted from a number of findings by the court, including Meier's personal liability on the Note and the denial of the affirmative defense of set off, that involved examination of same factual background that is the setting for Meier's counterclaim. The Court of Appeals would tread much of the same factual ground, albeit not the same legal issues, in an appeal from liability on the Note as it would in an appeal from whatever judgment results on the counterclaim.

Ultimately, the court must assess the equities in deciding whether to enter a Rule 54(b) determination. *Curtiss-Wright*, 446 U.S. at 11. Defendants argue that there is no risk that the delay in enforcing the judgment on the Note will result in non-payment, because Meier has testified under oath that he has put the money for repayment of the Note into escrow, where the funds remain. (Defs.' Resp. Opp. Pl.'s Mot. Entry Rule 54(b) J. at 8-9.) However, Defendants do not provide details on that escrow. Defendants also point out that the interest rate on the Note, 8.5%, is substantially above present market interest rates, and the benefit accrues to the Plaintiff. (*Id.* at 9.) Plaintiff makes two arguments to establish that he will suffer "unjust harm" if final judgment is delayed. *See Architectural*, 551 F. Supp. at 807. Plaintiff argues that "[a] Rule 54(b) finding will further the purposes of the Illinois statutory mechanism for liquidation proceedings and the . . . Order of Liquidation." (Pl.'s Mem. Supp. Mot. Rule 54(b) J. at 8.) In short, Plaintiff argues that he needs the money to pay the creditors of Prestige. Plaintiff also states that Defendants have not placed sufficient funds in escrow to cover the value of the Note and its accumulated interest, and therefore

6

there is risk that the judgment will not be fully paid. (Reply Mem Supp. Pl.'s Mot. Rule 54(b) J. at 7.)

Plaintiff's assertion that he would rather have the money now than later, or the fact that Defendants have not placed sufficient funds in escrow to cover the value of the Note and accumulated interest, are not sufficient to meet his burden to show that Plaintiff will suffer unjust harm. As a general matter, parties will always prefer to be able to collect their judgments sooner rather than later. In the normal course of litigation however, they must wait until a final judgment at the conclusion of the litigation to collect a judgment. *See, e.g., Alonzi v. Budget Const. Co.,* 55 F.3d 331, 332 (7th Cir. 1995). Rule 54(b) is intended to alter this only in limited circumstances.

In making an equities determination under Rule 54(b), the district court "should feel free to consider any factor that seems relevant to a particular action." *Bank of Lincolnwood,* 622 F.2d at 949, *quoting* 10 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2659 at 77-78 (1973). Defendants have asserted a counterclaim against the Plaintiff that, while not sufficiently related to preclude summary judgment, potentially exceeds the judgment against Defendants on the Note. That counterclaim has survived a motion for summary judgment, and, except for *Plaintiff's* motion to amend his answer to assert additional defenses, is ready for immediate trial. "A counterclaim asserting a potential offset, regardless of its merits, is not an automatic bar to a Rule 54(b) determination." *Capital City Distributors v. Classics Int'l Entertainment, Inc.,* 95 C 5018, 1996 WL 535314 at *8 (N.D. Ill. Sept. 18, 1996)(Coar, J.). However, "the presence of a counterclaim which could yield a setoff against the judgment weighs significantly against granting the motion." *Prudential Ins. Co. of America v. Curt Bullock Builders Inc.,* 626 F. Supp. 159, 168-69 (N.D. Ill. 1985).

7

Plaintiff does not demonstrate that his status as the Liquidator for an insurance company changes the court's analysis. Arguably, to the extent that the Plaintiff as Liquidator wants to use the funds to pay the present claims of Prestige's creditors (Pl.'s Reply Mem. Supp. Pl.'s Mot. Entry Rule 54(b) J. at 8), there is a question as to whether funds would remain to pay the counterclaims, were Defendants to prevail. In this respect it is notable that, although Plaintiff cites the decision by Judge Aspen in *Hartford Accident and Indemnity Co. v. Boise Cascade Corp.*, 489 F. Supp. 855 (N.D. Ill. 1980), to grant a Rule 54(b) determination, Plaintiff does not propose the approach adopted by Judge Aspen to have the amount of the judgment deposited with the Clerk of the Court. *Id.* at 860. As Defendants observe, Plaintiff sold the stock that, in Defendants' view, was the subject of the Call Option Agreement and has had the benefit and use of those funds while Defendants' claim under the Call Option Agreement is still waiting determination. In *Curtiss-Wright*, the Court noted that the potential insolvency of the movant "would weigh against qualifying [for a Rule 54(b) judgment]; that very threat would cast doubt upon [plaintiff's] capacity to produce . . . should [defendant] prevail on some of its counterclaims." 446 U.S. at 12 (emphasis omitted). Similarly, in *Bank of Lincolnwood*, the trial court identified a possibility that the plaintiff might be unable to collect its judgment as a reason to grant the plaintiff's Rule 54(b) motion. 622 F.2d at 949. The same reasoning should apply to a counterclaim. Thus, this factor also weighs against entering a Rule 54(b) determination for Plaintiff.

Plaintiff has not alleged that Defendants are in a "precarious financial position" such as might justify immediate payment under *Bank of Lincolnwood*, 622 F.2d at 949. Indeed, Plaintiff is better protected than most by the apparently undisputed existence of a substantial sum in escrow. The fact that the Note bears an interest rate above the present market is an equitable factor which can also be

8

considered. *See Curtiss-Wright*, 446 U.S. at 11.

A final consideration in the denial of the motion is the fact that the disposition of the counterclaim has been delayed as a result of Plaintiff's motions. When the ruling on the motions for summary judgment was entered, the parties were ordered to appear to set the date for trial of the remaining issues. (Order, Sept. 26, 2002.) [Dkt # 77.] The parties requested time to consider settlement, and subsequently Plaintiff filed the three motions at issue here. Except for any additional time Defendants may need to deal with Plaintiff's additional affirmative defenses, this case is ready for trial on the counterclaim. The most efficient and just solution for all parties, as well as the judicial system, is to try the remaining issues in this case as soon as possible, and to enter one final judgment.

For the reasons set forth above, Plaintiff's Motion for Entry of a Rule 54(b) Judgment [dkt # 82] is denied.

<u>Plaintiff's Motion for an Order Dismissing, or in the Alternative, Staying Meier's Counterclaim</u>.

On July 26, 1994, the Circuit Court of Cook County entered an "Order of Liquidation With a Finding of Insolvency" against Prestige. (Pl.'s Mem. Supp. Mot. Dismiss or Stay Countercls., Ex. A, the "Liquidation Order.") That Order appointed Plaintiff's predecessor as the Liquidator of Prestige. (*Id.* at 4 ¶ B.) The Circuit Court further ordered that "all persons are hereby restrained and enjoined from asserting any claim against the Liquidator or the Defendant, Prestige, except insofar as such claims arise in, or are brought in, these liquidation proceedings." (*Id.* at 7 ¶ K.) Plaintiff now argues that Meier's counterclaim should be dismissed in order to give full faith and credit to the Liquidation Order or that the principle of comity counsels for dismissal. (Pl.'s Mem. Supp. Mot.

9

Dismiss or Stay Countercls. at 5-6.)[3] Alternatively, Plaintiff argues that Meier's counterclaim should be dismissed or stayed until the conclusion of the state liquidation proceedings under the principle of abstention expressed in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

Defendants respond that the Circuit Court's injunction is inapplicable because the counterclaim does not seek recovery from the estate but rather from "the Liquidator itself." (Defs.' Resp. Opp. Pl.'s Mot. Dismiss or Stay Countercls. at 3.) Defendants also argue that the counterclaim was not a new proceeding in federal court and thus, does not fall within the terms of the injunction. Furthermore, Defendants argue that Plaintiff has waived any objection to the forum by failing to object until this point and by consenting to the jurisdiction of the Magistrate Judge. Defendants object to the application of *Burford* on the ground that the policy concerns of that case are not implicated by Meier's counterclaim. Because this court agrees that Plaintiff has waived any argument that the counterclaim should be dismissed, and that abstention under the *Burford* doctrine is not appropriate, it is not necessary to reach the other grounds argued by Defendants.

This case began with a complaint filed by the Plaintiff in the Circuit Court of Cook County on April 3, 1998. (Pl.'s Mem. Supp. Mot. Dismiss or Stay Countercls., Ex. B.) Defendants filed a notice of removal to the federal court on July 2, 1998. [Dkt # 1.] Plaintiff now argues that the removal and assertion of a counterclaim was "in clear violation of the state court's injunction." (Pl.'s Mem. Supp. Mot. Dismiss or Stay Countercls. at 4.) However, Plaintiff did not object to that

---

[3] As Judge Norgle of the District Court observed in connection with a similar motion by the Illinois Director of Insurance in another case involving a liquidation order, "[A] state cannot enjoin federal proceedings." *QBE International Insurance Ltd. v. Shapo*, 01 C 0508, 2002 WL 276233 at *5 (N.D. Ill. Feb. 27, 2002)(Norgle, J.). The Full Faith and Credit clause of the Constitution states, "Full Faith and Credit shall be given in each state to the public Acts, Records, and judicial Proceedings of every other state." U.S. Const. Art. IV § 1.

10

removal. Instead, Plaintiff's counsel filed their appearance [Dkt # 2] and an Amended Complaint. [Dkt # 12.] Meier's counterclaim was filed in March, 1999. [Dkt # 16.] Plaintiff answered that counterclaim in April, 1999, not raising any objection to the propriety of the counterclaim in this forum. [Dkt # 17.] In May, 2000, Defendants were ordered to file an amended notice of removal correcting jurisdictional deficiencies (identifying the citizenship of the parties). [Dkt # 33.] Again, Plaintiff did not object, even though this was after the filing of the counterclaim that allegedly violated the injunction. Discovery proceeded, settlement conferences were held, and both parties consented to the exercise of jurisdiction by a Magistrate Judge under 28 U.S.C. § 636(c). [Dkt ## 45, 46.][4]

It is particularly significant that in January, 2002, Plaintiff filed a motion in this court for partial summary judgment in his favor on Meier's counterclaim. [Dkt # 58.] Plaintiff's motion asking this court for entry of a judgment on the merits in his favor on Meier's counterclaim is inconsistent with Plaintiff's present position that the Prestige liquidation proceeding is the "exclusive forum designed to adjudicate claims against the Prestige estate." (Pl.'s Mem. Supp. Mot. Dismiss or Stay Countercls. at 6.) Apparently, Plaintiff's position is that this court may adjudicate a claim against the estate if the outcome is to deny the claim, but not if the outcome is to grant the claim.

Plaintiff cites *Superintendent of Ins. of St. of New York v. Baker & Hostetler*, 668 F. Supp. 1057 (N.D. Ohio 1986), as factually analogous. However, in that case, the plaintiff-liquidator promptly moved to dismiss the counterclaim upon its filing. In this case, Plaintiff did not move to dismiss Meier's counterclaim, but rather answered and proceeded through discovery to a motion for

---

[4] Consent to the exercise of jurisdiction by a Magistrate Judge does not, in itself, waive any claims or rights except the right to a judgment by an Article III judge. *Farmer v. Litscher*, 303 F.3d 840, 844 (7th Cir. 2002).

summary judgment.

Plaintiff argues that he cannot be held to have waived his argument for abstention under the *Burford* doctrine, because abstention can be raised by the court *sua sponte*. Although abstention under the *Burford* doctrine may be raised *sua sponte* by the court (*see., e.g., Waldron v. McAtee*, 723 F.2d 1348 (7th Cir. 1983)), that does not mean that the court may not take into consideration a party's previous actions in the lawsuit in considering whether abstention is appropriate. "[T]he power to dismiss recognized in *Burford* represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996), quoting prior authority. The Seventh Circuit has stated:

> *Burford* abstention is appropriate in two situations. First, federal courts should abstain from deciding 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.' We should also abstain from the exercise of federal review that 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'

*Int'l Coll. of Surgeons, v. City of Chicago*, 153 F.3d 356, 361-62 (7th Cir. 1998), quoting *Quackenbush*, 517 U.S. at 726-27. Plaintiff argues that federal courts have recognized Illinois' regulation of the insurance industry as a special forum, justifying abstention. *See Hartford Casualty Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419, 426 (7th Cir. 1990). The issues in Meier's counterclaim do not invoke public policy; they are standard common law claims. Furthermore, by litigating Meier's counterclaim for three years in this court, up to and including requesting the court to enter judgment on that counterclaim, Plaintiff has fatally undermined any argument that Meier's counterclaim is a claim that should be adjudicated in a different and special forum to avoid disruption of a state policy.

Plaintiff argues that "denying abstention would destroy the primary purpose of the Illinois

12

Insurance Code by forcing the Liquidator to defend suits, dissipate funds and expend litigation costs outside the liquidation court." (Pl.'s Mem. Supp. Mot. Dismiss or Stay Countercls. at 13.) That argument comes too late here, after almost five years of litigation costs have been expended in this forum. The Liquidation Order was entered in 1994, almost nine years ago. Presumably, the Liquidator has been marshaling assets and paying creditors since that time. Plaintiff's argument that a judgment against the Liquidator here would allow Meier to "jump ahead" of other creditors of Prestige ignores reality.

In a similar vein, Plaintiff requests that the court exercise its discretion to stay proceedings on Meier's counterclaims until the conclusion of the liquidation proceedings. However, Plaintiff provides no information about the status of those proceedings, or how, if Meier is successful on his counterclaim, he would collect his judgment after the liquidation proceedings are terminated. This court finds that abstention is not appropriate here.

Plaintiff's motion to dismiss or stay Meier's counterclaim [dkt # 85] is denied.

Plaintiff's Motion to Amend Answer to Counterclaims.

Plaintiff seeks to amend his answer to Meier's counterclaim to add affirmative defenses of waiver and estoppel. [Dkt # 90.] Under the circumstances present in this case, Meier will not be unduly prejudiced by the amendment and consequently, Plaintiff's motion for leave to amend is granted.

Fact discovery in this case closed on November 30, 2000. (Order, Oct. 12, 2000.) [Dkt # 40.] After briefing, the court decided the parties' cross motions for summary judgment on September 27, 2002. Plaintiff included the defenses of waiver and estoppel in his motion for summary judgment on Meier's counterclaim. [Dkt # 58.] Because, *inter alia*, Plaintiff had failed

13

to plead those defenses, summary judgment was denied. It was "unnecessary to decide whether Plaintiff has waived these affirmative defenses, or, even at this late date, could seek leave to amend his Answer." *Shapo*, 2002 WL 31155059 at *17. In addition, this court determined, viewing the evidence in the light most favorable to Meier, that "a genuine issue of material fact exists as to whether Plaintiff, through his counsel or through the Department of Insurance, was aware of Meier's claim of rights arising from the Call Option Agreement and was not mislead into acting to the Plaintiff's detriment." *Id.*

In his motion for leave to amend, Plaintiff argues that he should be allowed to plead that Meier waived his rights under the Call Option Agreement as a result of "among other things, keeping the existence of the purported Call Option Agreement secret, and by failing to disclose the Agreement to the Liquidator in response to the Liquidator's stated intention . . . to sell the Columbia Lab shares." (Pl.'s Mem. Supp. Mot. Am. Answer Defs.' Countercls., Ex. A at 8.) Plaintiff argues that he should be allowed to plead that Meier should be estopped from asserting the counterclaim, because Meier kept the Call Option Agreement secret and Plaintiff "relied upon Meier's silence and conduct to [his] detriment" by selling the shares. (*Id.* at 8-9.)

Under Fed. R. Civ. P. 15(a), a party may amend a pleading after a responsive pleading has been served either with leave of the court or with consent of the adverse party, and leave "shall be freely given when justice requires." Fed. R. Civ. P. 15(a). The determination is committed to the discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Seventh Circuit has adopted a liberal policy with respect to amendments to pleadings so that cases may be decided "on the merits and not on the basis of technicalities." *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977). However, the court may deny a party leave to amend its pleading for reasons such as

14

"undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Foman*, 371 U.S. at 182.

In deciding whether to allow an amendment, the trial court must take into account any prejudice that will be suffered by the other party. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971). The party seeking to amend carries the burden of showing that no prejudice will result to the non-moving party. *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994). However, the nature of litigation is such that "virtually every amendment to a complaint results in some degree of prejudice to the defendant" because of the potential need for additional discovery or delay of the trial date. *Lanigan v. LaSalle Nat. Bank*, 108 F.R.D. 660, 662 (N.D. Ill. 1985). Thus, the court must evaluate whether an amendment would cause *undue* prejudice to the other party. *Id.* (emphasis added). A defendant may be unduly prejudiced in cases "where the amendment 'brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint' and where the amendment would require expensive and time-consuming additional discovery." *Id.*, citing *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383, 385 (N.D. Ill.1975).

Plaintiff's motion to amend his answer to Meier's counterclaim comes more than two years after the close of discovery and over three years after Plaintiff filed his original answer to the counterclaim. [Dkt # 90.] Defendants argue that this timeframe constitutes "undue delay . . . [that will] prejudice defendants by unnecessarily expanding the scope of litigation . . . ." (Defs.' Resp. Opp. Pl.'s Mot. Am. Answer at 2.) Plaintiff asserts that "Defendants will not suffer any undue prejudice because they had prior notice of the waiver and estoppel affirmative defenses and they had

a sufficient opportunity to conduct discovery on those defenses." (Pl.'s Mem. Supp. Mot. Am. Answer Defs.' Countercls. at 4.)

Plaintiff argues that he gave Defendants adequate notice of his intention to raise the defenses of waiver and estoppel before the close of discovery. (Id.) Plaintiff maintains that Defendants received warning of the defenses in a letter sent to Defendants' counsel on September 8, 2000 outlining all of Plaintiff's defenses in preparation for a settlement conference. (Id. at 5.) That letter was sent apparently two months before discovery closed on November 30, 2000. (Id.) Defendants acknowledge that during the parties' settlement negotiations Plaintiff raised the proposed defenses and Defendants "provided ample authority during those discussions to show that there was no basis for the defenses [of waiver and estoppel] as a matter of law." (Defs.' Resp. Opp. Pl.'s Mot. Am. Answer at 3.) However, Defendants contend that regardless of any discussion of the defenses during settlement talks, Plaintiff's unexplained delay in formally amending his answer is prejudicial to Defendants. (Id.)

"[D]elay and prejudice–reinforce each other." *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 752 F.2d 630 (Fed. Cir. 1985). "As a general rule, the risk of substantial prejudice increases with the passage of time." 6 Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1488 at 670 (1990). However, while it is true that "[t]he longer the delay, 'the greater the presumption against granting leave to amend,'" *In Re Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill. 1999) quoting *Tamari v. Bache & Co.*, 833 F.2d 904, 909 (7th Cir. 1988), it is well established that "delay is an insufficient basis for denying a motion to amend unless th[e] delay results in *undue* prejudice to the opposing party." *Tragarz v. Keene Corp.*, 980 F.2d 411, 432 (7th Cir. 1992)(emphasis added). In some cases, courts have allowed parties to amend their pleadings

shortly before a scheduled trial date, and accommodated the need for any additional discovery by continuing the trial. *See e.g., Velez v. Murphy*, 95 C 5250, 1998 WL 409418 at \*2 (N.D. Ill. July 15, 1998)(Grady, J.). The decision depends on the facts of the particular case. *See C&F Packing Co., Inc. v. IBP Inc.*, 93 C 1601, 1997 WL 160763 at \*1 (N.D. Ill. Mar. 28, 1997)(Williams, J.)(granting defendant leave to amend answer over three years after the time of original filing of answer). *Compare Sterling v. Riddle*, 99 C 2678, 2000 WL 198440 (N.D. Ill. Feb 11, 2000)(Conlon, J.)(leave to amend answer to assert *res judicata* and statute of limitations denied).

Defendants cite *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618 (7th Cir. 1987) and *THK America, Inc. v. NSK, Ltd.*, 157 F.R.D. 660 (N.D. Ill. 1994), in support of their contention that Plaintiff's delay constitutes undue prejudice because "[a]llowing amendment years after the close of discovery would frustrate the express purpose of pleadings as a device to limit and focus the issues for discovery and trial, and to eliminate needless expense to the parties." (Defs.' Resp. Opp. Pl.'s Mot. Am. Answer at 6.) However, in the former case, the court affirmed the trial court's decision to deny a motion to amend brought after the close of discovery in part because it determined that the amendment would have been "fruitless." *Kleinhans*, 810 F.2d at 625. Here, Defendants do not argue that the proposed affirmative defenses would be futile.[5] In the *THK America* case, the court denied the defendant leave to amend after the close of discovery in a patent infringement action because the defendant sought to charge the plaintiff with entirely new antitrust and state-law infractions that would require substantial new discovery that would bring the litigation to a "virtual

---

[5] "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)(citations omitted).

stand-still." 157 F.R.D. at 664-666. These circumstances are not present in the case at hand.

In this case, the issue of whether Defendant waived its right to or should be estopped from enforcing the Call Option Agreement overlaps both temporally and factually with the other matters to be decided at trial. Plaintiff's argument that "this Court has already determined that a trial on the merits of the waiver and estoppel defenses is warranted" (Pl.'s Mem. Supp. Mot. Am. Answer Defs.' Countercls. at 7), substantially overstates the decision on the motion for summary judgment. However, discovery in this case has covered the factual grounds surrounding communication between Plaintiff and Defendants about the Call Option, to such an extent that Defendants were able to demonstrate the existence of a question of material fact about Plaintiff's argued defenses of waiver and estoppel. *See Shapo,* 2002 WL 31155059 at *17 (Viewed in the light most favorable to Meier "a genuine issue of material fact exists as to whether Plaintiff . . . was aware of Meier's claim of rights arising from the Call Option Agreement and was not mislead into acting to the Plaintiff's detriment."). In opposing summary judgment Defendants argued that there is "ample evidence not only that the Liquidator knew or should have known about the existence of the Call Option Agreement, but also that the Agreement was referred to in correspondence between Meier and the Liquidator and was the basis for the contribution of the Columbia shares to Fargo in the first place." (Defs.' Mem. Opp. Pl.'s Mot. for Partial S.J. at 17-18.) [Dkt # 75.] Defendant listed as supporting evidence documents produced during discovery including written correspondence with Plaintiff and sets of handwritten notes by the staff of the Department of Insurance. (*Id.* at 18.)

In *R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.,* 99 C 1174, 2001 WL 526676 at *4-5 (N.D. Ill. Mar. 22, 2001)(Kocoras, J.), the court granted the plaintiff leave to amend its complaint two years after it had been filed because the "the facts supporting the proposed

amendment overlapped with those supporting its existing claim." *See also C&F Packing Co., Inc.*, 1997 WL 160763 at *1 (granting defendant leave to amend answer over three years after the time of filing because "most (if not all) of the discovery relevant to the [amendment] ha[d] already been generated.").

Defendants fail to specify what additional discovery would be necessary or how it would be unduly burdensome or prejudicial. (Defs.' Resp. Opp. Pl.'s Mot. Am. Answer at 5.) Rather, Defendants argue generally that "[i]t is impossible to retrace the course of discovery at this point and determine exactly what additional areas of inquiry or witnesses Meier would have explored had plaintiff initially pled the defenses it now proposes." (*Id.*) In the circumstances of this case, that generality does not outweigh the policy in favor of allowing amendment. *See L.J. Laboratories, L.L.C. v. Sharper Image Corp.*, 97 C 6106, 1999 WL 413563 at *2 (N.D. Ill. June 2, 1999)(Plunkett, J.)(granting plaintiff leave to amend in part because defendant "failed to identify a single means by which it would be prejudiced.").

Fed. R. Civ. P. 8(c) requires a party to plead all affirmative defenses in its answer to the complaint. Plaintiff does not offer any explanation as to why he waited for three years to move to amend his complaint. Given the fact that waiver and estoppel were expressly discussed in both the settlement negotiations and plaintiff's summary judgment motion, the delay in pleading those defenses appears to be the result of carelessness rather than dilatory motives or bad faith. In *C&F Packing Co.*, the court granted defendant's motion to amend its answer, in part because "although it [was] difficult to understand why [defendant] waited so long to file an amended answer, the delay appear[ed] to stem from carelessness, rather than dilatory motives or bad faith." 1997 WL 160763 at *1.

19

For the reasons discussed above, Plaintiff's Motion to Amend Answer to Defendants' Counterclaims [dkt # 90] is granted.

## CONCLUSION

Plaintiff is given leave to file his Amended Answer and Affirmative Defenses instanter. Status is hereby set for **May 28, 2003 at 9:45 a.m.**, at which time Defendants shall be prepared to discuss what, if any, specific additional discovery they would seek to take in light of the amendment.

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED:   May 15, 2003**